**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Esther Panuco,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-18-00329-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Mary Esther Panuco's Application for Supplemental Security Income Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 10, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 11, "Def.'s Br."), and Plaintiff's Reply (Doc. 12, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 9, R.) and now reverses the Administrative Law Judge's decision (R. at 22–35) as upheld by the Appeals Council (R. at 1–6).

**I.  BACKGROUND**

Plaintiff filed an application for Supplemental Security Income Benefits on September 19, 2013 for a period of disability beginning June 6, 2013. (R. at 22.) Plaintiff's claim was denied initially on January 7, 2014 (R. at 22), and on reconsideration on July 9, 2014 (R. at 22). Plaintiff then testified at a video hearing held before an Administrative

Law Judge ("ALJ") on July 14, 2016. (R. at 46–65.) On October 13, 2016, the ALJ denied Plaintiff's Application. (R. at 35.) On November 29, 2017, the Appeals Council denied a request for review of the ALJ's decision. (R. at 1–6.) On January 30, 2018, Plaintiff filed this action seeking judicial review of the denial.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following alleged impairments: fibromyalgia; degenerative disc disease of the lumbar spine; and generalized osteoarthritis. (R. at 25.)

Ultimately, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404." (R. at 25.) The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to "perform light work as defined in 20 C.F.R. § 404.1567(b)" in a role such as parking lot cashier, assembler, or packer. (R. at 34.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises three arguments for the Court's consideration: (1) the ALJ erred by discrediting Plaintiff's pain and symptom testimony; (2) the ALJ erred by rejecting the opinions of Plaintiff's primary care physician and treating specialist; and (3) the ALJ erred by rejecting lay witness evidence. (Pl.'s Br. at 1.)

### A. The ALJ Erred by Discrediting the Opinions of Plaintiff's Treating Physician

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*

Given this hierarchy, if the treating physician's evidence is controverted by a nontreating or nonexamining physician, the ALJ may disregard it only after "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Here, the ALJ assigned little weight to the opinion of Plaintiff's primary care physician, Dr. Keith Shillito. (R. at 32.) The ALJ also gave little weight to the opinions of two other examining physicians and gave "substantial weight" only to the opinions of agency desktop reviewers. (R. at 32.) While Plaintiff argues that the ALJ erred in discrediting both Dr. Shillito and another examining surgeon, the Court need only address the treatment of Dr. Shillito's opinion, because it is dispositive.

Specifically, the ALJ discredited Dr. Shillito's findings that Plaintiff suffers from fibromyalgia and its side effects. As explanation for her decision, the ALJ noted that Dr. Shillito's "opinions appear to be based upon the claimant's subjective complaints," that his opinion on a checkbox fibromyalgia form is "extreme and not supported by his own clinical findings," and that "Dr. Shillito is a family/general medical provider rather than a

specialist." (R. at 32.) For reasons the Court will explain below, these explanations do not amount to specific and legitimate reasons to discredit a treating physician's diagnosis of fibromyalgia.

First, the ALJ indicates that Dr. Shillito's opinion is apparently based in large part upon Plaintiff's subjective complaints and that Plaintiff went over her disability forms with Dr. Shillito in his office. (R. at 32.) In cases of fibromyalgia, a diagnosis is often based upon a plaintiff's subjective complaints because "there are no laboratory tests to confirm the diagnosis." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). In fact, the Ninth Circuit has embraced the view that "[f]ibromyalgia is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms.'" *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) (quoting *Benecke*, 379 F.3d at 590). Thus, it was proper for Dr. Shillito to rely heavily on Plaintiff's self-reported symptoms. Defendant points to no authority that prohibits a treating physician from going over disability forms with a patient, nor did the ALJ find evidence that Plaintiff was malingering with the aid of Dr. Shillito.

Next, the ALJ found that Dr. Shillito's opinion was not supported by objective medical evidence. (R. at 32.) Specifically, the ALJ noted that Dr. Shillito's opinion on the checkbox form was "not supported by his own clinical findings, which show minimal exams and medication refills overall." (R. at 32.) While an ALJ may cite as a specific and legitimate reason to discredit physician testimony the fact that a medical opinion is not supported by that physician's own records, that is not the case here. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that the discrepancy between a treating physician's testimony and his prior recorded observations of a claimant constitutes "a clear and convincing reason for not relying on the doctor's opinion").

Because fibromyalgia diagnoses are often based on subjective reports of a patient's symptoms, SSR 12-2p provides a method for the SSA to evaluate fibromyalgia based upon treatment records. According to that ruling, a claimant may establish fibromyalgia "by providing evidence from an acceptable medical source." SSR 12-2p(I), 2012 WL 3104869 (July 25, 2012). While an ALJ may not "rely upon the physician's diagnosis alone" and

must "review the physician's treatment notes to see if they are consistent with the diagnosis," there are certain criteria in medical records that give weight to a physician's opinion that a claimant has fibromyalgia. According to the ruling, an ALJ "may find that a person has [fibromyalgia] if he or she has all three of the following criteria: (1) A history of widespread pain . . .; (2) At least 11 positive tender points on physical examination . . .; and 3) Evidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p(B). Dr. Shillito's records prove the existence of all three criteria.

First, Dr. Shillito's treatment records indicate that Plaintiff has "a history of widespread pain." SSR 12-2p(B)(1). For example, in September 2015, Dr. Shillito recorded Plaintiff's reports of pain whenever she walks, and pain that radiates in her thigh upon standing. (R. at 832.) In August 2014, Dr. Shillito noted lower back pain. (R. at 813.) To the extent that Defendant argues Dr. Shillito's opinion is not supported by the records of other physicians, a Nurse Practitioner noted in October 2015 that Plaintiff reported "[h]er joints were all swollen and painful." (R. at 849.) These are but a few of the instances of widespread pain that Plaintiff reported to Dr. Shillito and others, satisfying the first of the SSR 12-2p(B) criteria.

The ruling next requires the ALJ to "perform digital palpitation" to assess tender points. SSR 12-2p(A)(2)(b). Dr. Shillito recorded on February 11, 2014, that Plaintiff "has 18/18 tender points on exam." (R. at 805.)[1]

The final requirement is laboratory testing that rules out disorders other than fibromyalgia which could cause a claimant's symptoms. SSR 12-2p(A)(2)(c). On July 10, 2015, Dr. Shillito's notes indicate that a Nurse Practitioner had done blood work and x-rays. (R. at 836.) A different physician performed chest x-rays, urinalysis, a

---

[1] After performing a tender points exam, Dr. Shillito also noted that Plaintiff satisfies the "ACR 2010 preliminary diagnostic criteria for fibromyalgia." (R. at 805.) He refers to an alternative set of criteria in SSR 12-2p(B) that allows a finding of fibromyalgia where there is: (1) history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms; and (3) evidence that rules out other disorders. Having already satisfied the first and third requirements, Dr. Shillito noted that Plaintiff suffers from at least six fibromyalgia symptoms, including "chronic low back pain, polyneuropathy, carpal tunnel syndrome, depression, anxiety and fatigue." (R. at 805.)

comprehensive metabolic panel, a complete blood count, and an erythrocyte sedimentation rate blood test. (R. at 845.) Dr. Shillito's records indicate that, even after this comprehensive testing, he believed the most accurate diagnosis for Plaintiff was fibromyalgia. Having thus satisfied all of the criteria outlined in SSR 12-2p, Dr. Shillito's treatment records support his diagnosis of fibromyalgia.

Finally, the ALJ discredited Dr. Shillito's opinion in part because he is a primary care provider, and not a specialist. (R. at 32.) This was error because while 20 CFR § 404.1527 allows an ALJ to "give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist," that factor is not determinative. Indeed, it is merely one factor to consider among others including the existence of a treatment relationship, the length of that relationship, and the consistency of an opinion with the medical record. 20 CFR § 404.1527(c). Given that Dr. Shillito was Plaintiff's treating physician and his opinion is supported by medical evidence as required by SSR 12-2p, it was improper to discredit his opinion because he is not a specialist in fibromyalgia.[2]

### B. The Credit-as-True Rule Applies

Having determined that the ALJ erred in rejecting Dr. Shillito's opinion, the Court now turns to Plaintiff's argument that the proper remedy is to remand for entry of benefits. (Reply at 1.) Generally, remand for further administrative proceedings is the appropriate remedy if enhancement of the record would be useful. *Id.* However, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988). More specifically, the district court should credit evidence that was rejected during the administrative process as true and remand for an immediate award of benefits when (1) the ALJ failed to provide legally sufficient

---

[2] Because proper consideration of Dr. Shillito's assessment is dispositive, the Court need not address Plaintiff's arguments that the ALJ erred in assessing Plaintiff's symptom and lay witness testimony.

- 7 -

reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited as true. *Harman*, 211 F.3d at 1178; *see also McCartey v. Massanari*, 298 F.3d 1072, 1076–77 (9th Cir. 2002).

Here, the Vocational Expert ("VE") was presented with a hypothetical based on Dr. Shillito's diagnosis. (R. at 62.) When confronted with that hypothetical in which Plaintiff could "only sit, stand, walk combined altogether for four hours out of an eight-hour workday," the VE testified that Plaintiff would not be able to maintain full-time employment. (R. at 62.) Further, when the ALJ added to the hypothetical, "again based on Dr. Shillito, that the individual would need to take unscheduled breaks at least 10 times a day for 15-30 minutes to rest," the VE again concluded that Plaintiff would not be able to sustain full-time work. (R. at 62.)

This testimony makes clear that if Dr. Shillito's opinion were credited as true, the ALJ would be required to find the claimant disabled. Thus, there is no need to remand for further administrative proceedings, and the Court will remand for entry of benefits.

**IT IS THEREFORE ORDERED** reversing the July 14, 2016, decision of the Administrative Law Judge, (R. at 46–65), as upheld by the Appeals Council on November 29, 2017 (R. at 1-6).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 27th day of March, 2019.

Honorable John J. Tuchi
United States District Judge